IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MICHAEL JACKSON,<br><br>Plaintiff,<br><br>v.<br><br>SEAN DUFFY, in his official capacity as Secretary, U.S. Department of Transportation,<br><br>Defendant. | Civil Action No.<br><br>Jury Trial Demand |

COMPLAINT FOR DISABILITY DISCRIMINATION, FAILURE TO ACCOMMODATE, AND HOSTILE WORK ENVIRONMENT

Plaintiff, Michael Jackson ("Plaintiff" or "Mr. Jackson"), by and through undersigned counsel, alleges as follows:

## I. NATURE OF THE ACTION

1. This is an action for declaratory, injunctive, and monetary relief to remedy unlawful discrimination, retaliation, and harassment in federal employment in violation of federal civil rights statutes.

2. Plaintiff is an African American man, over 40 years old, and a former Aerospace Engineer Technician with the Federal Aviation Administration ("FAA"), where he was subjected to repeated discrimination on the basis of

race (African American), color (Black), disability, and age, and to reprisal for engaging in protected EEO activity.

3. Plaintiff brings this action under:

a. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16, for discrimination, retaliation, and hostile work environment based on race, color, and reprisal;

b. Section 501 of the Rehabilitation Act of 1973, 29 U.S.C. § 791 et seq., for disability discrimination, including the Agency's placing him on light duty without engaging in the interactive process, failure to provide reasonable accommodation, and disability-based hostile work environment; and

c. The Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq., for discrimination and retaliation based on Plaintiff's age.

4. Plaintiff seeks to recover back pay, front pay or reinstatement, compensatory damages, expungement of the 14-day suspension and other disciplinary actions, and all other appropriate equitable, declaratory, and injunctive relief, together with attorneys' fees and costs.

## II. JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343(a)(4) (civil rights jurisdiction), 42 U.S.C. § 2000e-16(c) (Title VII federal-sector jurisdiction),

29 U.S.C. § 794a(a)(1) (Rehabilitation Act enforcement), and 29 U.S.C. § 633a(c) (ADEA federal-sector jurisdiction). Plaintiff seeks redress for discrimination, retaliation, and hostile work environment under Title VII, the Rehabilitation Act, and the ADEA.

6. Venue is proper in this Court under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391(e) because the unlawful employment practices and retaliatory acts alleged herein were committed within the Northern District of Georgia, including at the FAA Atlanta Line Station in Kennesaw, Georgia, where Plaintiff worked and would have continued to work but for Defendant's unlawful conduct. Plaintiff's personnel records, supervisors, and the decision-makers responsible for the discriminatory actions are also located within this judicial district.

## III. PARTIES

7. Plaintiff Michael Jackson is a citizen and resident of the State of Georgia. At all times relevant to this action, he was employed by the Federal Aviation Administration ("FAA"), an operating administration of the U.S. Department of Transportation, as an Aerospace Engineer Technician assigned to the Atlanta Line Station in Kennesaw, Georgia, within the Northern District of Georgia.

8. Plaintiff is African American, Black, and male, and is therefore a member of protected classes under Title VII of the Civil Rights Act of 1964.

9. Plaintiff is an individual with a disability within the meaning of the Rehabilitation Act of 1973, 29 U.S.C. § 791 et seq. During the relevant period, Plaintiff's supervisors were aware that he had medically documented conditions—including high blood pressure and sleep apnea—and that his prescribed medications and related symptoms limited his ability to safely perform run/taxi operations and other safety-sensitive tasks. These impairments substantially limited one or more major life activities, including working, lifting, concentrating, and operating machinery, and implicated major bodily functions, including cardiovascular and respiratory functions.

10. Plaintiff is a qualified individual with a disability, as he possessed the knowledge, skills, experience, and certifications required for the Aerospace Engineer Technician position, and he was fully capable of performing the essential functions of his job with or without reasonable accommodation.

11. Defendant Sean Duffy is the Secretary of the U.S. Department of Transportation ("DOT"). He is sued in his official capacity only, as required for federal-sector employment discrimination claims. The Department of Transportation is an "employer" within the meaning of Title VII, the Rehabilitation Act, and the ADEA, and is responsible for the acts, omissions,

policies, and decisions of its officials, managers, and supervisors, including those at the FAA's Atlanta Line Station.

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

12. Plaintiff initiated contact with an Equal Employment Opportunity (EEO) Counselor on or about April 27, 2022, alleging discrimination, harassment, retaliation, and failure to accommodate based on race, color, disability, age, and prior protected activity arising out of his employment at the FAA Atlanta Line Station in Kennesaw, Georgia.

13. On August 8, 2022, Plaintiff timely filed a formal EEO complaint, Agency No. DOT-2022-29510-FAA-03, alleging multiple incidents of discrimination, hostile work environment, and reprisal.

14. Plaintiff timely requested a hearing before an EEOC Administrative Judge. After briefing on the Agency's Motion for Summary Judgment, the Administrative Judge issued a Decision and Order Entering Summary Judgment on September 11, 2024, finding in favor of the Agency.

15. On September 27, 2024, the Agency issued its Final Order fully implementing the Administrative Judge's summary judgment decision.

16. On October 9, 2024, Plaintiff timely appealed the Agency's Final Order to the EEOC's Office of Federal Operations ("OFO"), which assigned Appeal No.

2025000143. On September 18, 2025, OFO issued its decision affirming the Agency's Final Order.

17. Plaintiff has filed this civil action within ninety (90) days of receiving the OFO decision, thereby satisfying the timeliness requirements of Title VII, the Rehabilitation Act, and the ADEA.

18. All other conditions precedent to suit, including statutory and regulatory exhaustion prerequisites under 29 C.F.R. Part 1614, have been satisfied or have occurred, been performed, or been waived.

## V. FACTUAL ALLEGATIONS

21. Plaintiff Michael Jackson began working for the Federal Aviation Administration ("FAA") in or about February 2012 as an Aerospace Engineer Technician assigned to the Atlanta Line Station in Kennesaw, Georgia. His duties included performing safety-sensitive aircraft inspections, maintenance-related functions, run/taxi operations, and technical support essential to safe aircraft operations.

22. Plaintiff's position required strict adherence to FAA safety protocols, physical presence on the aircraft operations line, coordination with pilots and maintenance personnel, and the performance of tasks requiring sustained concentration, physical exertion, and the ability to operate heavy equipment and machinery.

23. During the relevant period, Plaintiff had medical conditions for which he was prescribed medications that limited his ability to safely operate heavy machinery and perform certain safety-sensitive job functions. These impairments substantially limited major life activities, including working, lifting, concentrating, and operating machinery. Plaintiff disclosed these restrictions to management when asked to perform run/taxi operations that conflicted with his prescribed medication regimen.

24. The FAA became aware of Plaintiff's medical limitations when, in December 2021, Plaintiff informed management that his prescribed medications prevented him from safely performing run/taxi operations. Rather than engage in an interactive process or evaluate reasonable accommodations, management immediately restricted Plaintiff to light-duty work, removed him from essential job functions, and placed him in an isolated work area.

25. Plaintiff continued to perform assigned duties to the best of his ability, despite management's failure to explore or implement reasonable accommodations. He possessed the requisite skill, training, and experience to perform the essential functions of his position with or without accommodations, and he had successfully done so for years prior to the discriminatory treatment at issue.

26. Beginning in 2021 and continuing throughout 2022, Plaintiff was subjected to escalating scrutiny, disparate treatment, harassment, and retaliation by FAA management officials, including but not limited to Supervisor Wilbur E. Merritt, First-Line Supervisor Jeb F. Lynch, and Logistics Manager Michelle Hines. These officials repeatedly targeted Plaintiff through unwarranted changes to his job duties, improper removal of authorizations, forced recertification demands, hostile daily interactions, negative performance actions, and retaliatory disciplinary measures following his protected complaints.

27. On or about August 18, 2021, Plaintiff's supervisors increased his workload and imposed additional duties under the TRAX system in a manner inconsistent with how similarly situated non-Black employees were treated.

28. On or about September 10, 2021, Plaintiff was denied HAZMAT training, which was provided to other employees outside his protected classes. Plaintiff was qualified and eligible for this training, which would have enhanced his promotional and performance opportunities.

29. On or about October 22, 2021, Plaintiff was threatened with discipline for declining to perform overtime and weekend work for which he had not been scheduled. Non-Black or younger employees were not subjected to similar threats under comparable circumstances.

30. On or about November 3, 2021, Plaintiff reported concerns of harassment and unsafe working conditions. Management failed to take corrective action and failed to take his complaints seriously, contributing to a racially charged and hostile work environment.

31. In December 2021, Plaintiff's supervisors pressured him to undergo run/taxi recertification, despite his medical restrictions. When Plaintiff disclosed his medication-related limitations, management responded not by discussing accommodations but by placing him on light duty, stripping him of core job responsibilities, and treating him as if he were unqualified.

32. On or about December 7, 2021, Plaintiff was reassigned to an isolated workspace in the parts room and excluded from regular mechanic and operations duties. This reassignment was materially adverse and was applied in a punitive manner inconsistent with FAA policy and practice.

33. Throughout 2021-2022, management assigned Plaintiff to train coworkers, including newly hired employees and replacements, even while withholding normal technician duties from him. This created reputational harm and humiliation by forcing Plaintiff to train individuals who were then permitted to perform work he had been removed from.

34. On April 8, 2022, management required employees to rewrite or "correct" statements regarding a workplace incident. Several employees expressed fear

of reprisal and perceived the environment as hostile and intimidating. Plaintiff was blamed for conduct that did not occur and was subjected to heightened scrutiny following this event.

35. On April 11, 2022, management falsely characterized Plaintiff as having engaged in "confrontational" or inappropriate conduct, relying on disputed statements and coercive investigatory practices. These allegations were used to justify further punitive actions.

36. Beginning in May 2022, Plaintiff was repeatedly denied sufficient official time ("EEO time") to work on his discrimination complaint, despite being entitled to such time under federal regulations. This denial materially interfered with Plaintiff's ability to pursue his EEO rights and constituted retaliation for protected activity.

37. On or about July 6, 2022, management issued a Letter of Expectations ("LOE") criticizing Plaintiff's performance. The LOE was factually unfounded, selectively applied, and inconsistent with how comparable performance issues involving non-Black, non-disabled, or younger employees were handled.

38. On or about July 18, 2022, Plaintiff received a 14-day suspension based on exaggerated and false allegations related to attendance, communication, and compliance expectations. The discipline was retaliatory, unsupported by

evidence, and disproportionate compared to how other employees were treated.

39. During this period, management also removed Plaintiff's authorizations and certifications, thereby further diminishing his job duties, advancement opportunities, and professional standing.

40. Throughout 2021-2022, Plaintiff's work environment was permeated with hostility, disparate treatment, and reprisal. Management repeatedly scrutinized Plaintiff's conduct, imposed unwarranted discipline, and ignored his reports of mistreatment.

41. Similarly situated employees outside Plaintiff's protected classes-including non-Black, non-disabled, and younger technicians-were treated more favorably, were not placed on light duty for similar medical disclosures, were granted training opportunities, and were not subjected to comparable discipline or scrutiny.

42. Plaintiff reasonably perceived the constant monitoring, isolating assignments, restrictions on job duties, unfounded discipline, and denial of EEO time as harassment and retaliation for his protected activity.

43. Management's actions were motivated, at least in part, by Plaintiff's race (African American), color (Black), age, and disability, and by retaliation for Plaintiff's protected EEO activity.

44. The harassment, discrimination, and failure to accommodate were sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and create a hostile or abusive working environment.

45. As a direct result of Defendant's actions, Plaintiff suffered significant emotional distress, anxiety, humiliation, and loss of enjoyment of life, as well as damage to his professional reputation.

46. Plaintiff further suffered economic harm, including loss of pay, loss of overtime and premium pay opportunities, loss of advancement potential, and other benefits of employment.

47. Plaintiff would have continued working as an Aerospace Engineer Technician had the FAA not subjected him to unlawful discrimination, retaliation, and failure to accommodate.

## VI. CLAIMS FOR RELIEF

### COUNT I – REHABILITATION ACT: FAILURE TO PROVIDE REASONABLE ACCOMMODATION

48. Plaintiff realleges and incorporates by reference paragraphs 1-47 as though fully set forth herein.

49. Plaintiff is a qualified individual with a disability within the meaning of the Rehabilitation Act, 29 U.S.C. § 791 et seq., as his medically documented conditions and prescribed medications substantially limited major life

activities, including working, lifting, concentrating, and operating heavy machinery.

50. Defendant, through its supervisors and management officials, was aware of Plaintiff's medical limitations, including his disclosure in December 2021 that his prescribed medications prevented him from safely performing run/taxi operations and certain safety-sensitive tasks.

51. Despite this knowledge, Defendant failed to engage in the required good-faith interactive process to identify reasonable accommodations that would have enabled Plaintiff to continue performing the essential functions of his position. Plaintiff's disclosure was met not with discussion or evaluation, but with immediate reassignment to light-duty, exclusion from core duties, and punitive treatment.

52. Reasonable accommodations were available and included, but were not limited to:

    a. adjusting or redistributing safety-sensitive duties consistent with Plaintiff's temporary restrictions;

    b. modifying or reassigning non-essential tasks without punitive isolation or stripping Plaintiff of his position;

    c. evaluating alternative work structures or schedules consistent with FAA protocol; and

d. engaging in a lawful, documented interactive process to assess Plaintiff's restrictions and capabilities.

53. Defendant implemented no meaningful accommodation, offered no alternatives, and unreasonably failed to assess Plaintiff's limitations, instead treating Plaintiff's disclosure as a disciplinary or performance issue.

54. Defendant did not identify, and cannot identify, any undue hardship that would have resulted from providing reasonable accommodations to Plaintiff.

55. By failing to provide reasonable accommodations and by placing Plaintiff on punitive, isolating light duty without exploring alternatives, Defendant violated the Rehabilitation Act.

56. As a direct and proximate result of Defendant's failure to accommodate his disability, Plaintiff has suffered and continues to suffer economic damages, including lost wages, lost overtime, lost career advancement, and other financial harm, as well as non-economic damages, including emotional distress, humiliation, and loss of enjoyment of life.

COUNT II – REHABILITATION ACT: DISABILITY-BASED HARASSMENT / HOSTILE WORK ENVIRONMENT

57. Plaintiff realleges and incorporates paragraphs 1-56 as though fully set forth herein.

58. Plaintiff is a member of a protected class based on his disability.

59. Plaintiff was subjected to unwelcome conduct by supervisors and management officials, including, but not limited to:

   a. repeated pressure to perform safety-sensitive run/taxi duties despite medical restrictions;

   b. punitive reassignment to light duty and physical isolation from coworkers;

   c. removal from core technician duties without legitimate basis;

   d. unfounded accusations of "confrontational" behavior following coerced witness statements;

   e. heightened scrutiny of his performance and attendance;

   f. denial of official EEO time; and

   g. the issuance of a retaliatory 14-day suspension.

60. This conduct was based on Plaintiff's disability and his disclosure of medical limitations, as evidenced by management's immediate adverse actions following Plaintiff's disclosure, their refusal to explore accommodations, and their more favorable treatment of non-disabled employees.

61. The conduct described herein was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment, embarrass him among coworkers, undermine his professional standing, and create an abusive working environment.

62. Defendant is liable for this hostile work environment because the conduct was perpetrated by Plaintiff's supervisors and management officials acting within the scope of their employment, and because the Agency knew or should have known of the harassment and failed to take prompt and effective action to stop it.

63. As a direct and proximate result of Defendant's disability-based harassment, Plaintiff has suffered and continues to suffer economic and non-economic damages.

COUNT III – TITLE VII: RACE AND COLOR-BASED HARASSMENT / HOSTILE WORK ENVIRONMENT

64. Plaintiff realleges and incorporates paragraphs 1-63 as though fully set forth herein.

65. Plaintiff is a member of protected classes based on race (African American) and color (Black).

66. Plaintiff was subjected to unwelcome conduct, including but not limited to:

a. disproportionate scrutiny of his work;

b. the imposition of additional duties under the TRAX system;

c. denial of HAZMAT training that was provided to similarly situated non-Black employees;

d. threats of discipline not issued to other employees;

e. fabricated or exaggerated allegations used to justify adverse actions;

f. coerced witness statements following the April 8, 2022 incident; and

g. repeated adverse actions that were not imposed on non-Black or younger employees.

67. Plaintiff's race and color were motivating factors in the hostile treatment he received, as shown by:

a. management's consistent credibility preference for non-Black employees during investigations;

b. the more favorable training, opportunities, and enforcement of rules for non-Black employees; and

c. the racial dynamics described by coworkers who reported fear of reprisal and hostility at the Atlanta Line Station.

68. The conduct described above was sufficiently severe or pervasive to create a hostile or abusive working environment for Plaintiff in violation of Title VII.

69. Defendant is liable under Title VII because the hostile work environment was created, perpetuated, and condoned by supervisors and managers acting within the scope of their employment.

70. As a direct and proximate result of Defendant's race-based and color-based harassment, Plaintiff has suffered and continues to suffer economic losses, emotional distress, humiliation, anxiety, and other non-economic damages.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant and grant the following relief:

A. Declare that Defendant's actions and omissions described herein violated Plaintiff's rights under Title VII, the Rehabilitation Act, and the Age Discrimination in Employment Act (ADEA).

B. Order Defendant to make Plaintiff whole by providing appropriate injunctive and equitable relief, including but not limited to: correction of personnel records, restoration of certifications and authorizations, and removal of discriminatory and retaliatory actions from Plaintiff's employment file.

C. Award Plaintiff back pay, with interest, and all lost employment benefits, overtime, premium pay, and other economic losses resulting from Defendant's unlawful conduct.

D. Award compensatory damages for emotional distress, mental anguish, humiliation, loss of enjoyment of life, and other non-economic injuries, in an amount to be determined at trial and within the limits permitted by law.

E. Award Plaintiff his reasonable attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 2000e-5(k), 29 U.S.C. § 794a, and all other applicable provisions of law.

F. Award pre- and post-judgment interest on all monetary awards.

G. Grant such other and further legal and equitable relief as the Court deems just and proper.

## VIII. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted this 17th day of December, 2025.

Shaun C. Southworth, Esq.
GA Bar No. 959122
Southworth PC
1100 Peachtree St NE
Suite 200
Atlanta, GA 30309
Phone: 404-585-8095
Fax: 404-393-4129
shaun@southworthpc.com
Attorney for Plaintiff